1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

EMANNUEL C. MPOCK,

                 Plaintiff,

    v.

FCA US LLC,

                 Defendant.

Case No.  1:21-cv-00330-NONE-SAB

FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S REMAND MOTION

(ECF No. 11)

OBJECTIONS DUE WITHIN FOURTEEN DAYS

Plaintiff Emannuel Mpock ("Plaintiff"), who is represented by counsel, brings this action against Defendant FCA US LLC ("Defendant" or "FCA").[1]  Currently before the Court is Plaintiff's motion to remand.  (ECF No. 11.)  The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(7).

A hearing on the motion was held on November 10, 2021.  Counsel Tionna Dolin appeared by videoconference for Plaintiff.  Counsel Garrett B. Stanton appeared by videoconference for Defendant.  Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, the arguments presented at the November 10, 2021 hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending denying Plaintiff's motion to remand.

## I.

### RELEVANT BACKGROUND

Plaintiff alleges he purchased a 2017 Chrysler Pacifica vehicle on July 30, 2016, from Defendant and received an express warranty in connection with the purchase.  (Compl. ¶ 8, ECF

---

[1] As noted herein, Plaintiff initially also brought this action against a second defendant, Central Valley Chrysler Jeep Dodge Ram ("Central Valley"), but later dismissed Central Valley from this action.

No. 1-2.)  During the warranty period, the vehicle "contained or developed" a number of defects which Plaintiff alleges "substantially impair[ed] the use, value or safety of the Vehicle."  (Id. at ¶ 10.)  Plaintiff sought repairs but Defendant was unable to service or repair the vehicle in conformance with the applicable warranties, nor did Defendant promptly replace the Vehicle or make restitution to Plaintiff.  (Id. at ¶ 27.)

On March 27, 2020, Plaintiff initiated this action against FCA and Central Valley in the Los Angeles Superior Court, asserting claims for breach of implied and express warranty under California's Song-Berry Consumer Warranty Act (Cal. Civ. Code §§ 1790 et seq.)[2] ("Song-Beverly Act"), fraud by omission against FCA, and negligent repair against Central Valley.  (Id. at ¶¶ 26–62.)  Thereafter, the parties stipulated to transfer venue of the case to the Stanislaus Superior Court.  (See ECF Nos. 1-3, 1-4, 1-21.)  On or around May 1, 2020, FCA and Central Valley answered the complaint.  (ECF No. 1-17.)

On February 2, 2021, Plaintiff dismissed Central Valley from this action.  (ECF No. 1-6.)  On March 4, 2021, FCA, as sole remaining defendant, removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (diversity jurisdiction).  (ECF No. 1.)

On April 30, 2021, Plaintiff filed the instant motion for remand.  (ECF No. 11.)  Defendant opposed the motion and Plaintiff replied.  (ECF Nos. 14, 15.)  On October 15, 2021, the District Judge referred the matter to the undersigned for the preparation of findings and recommendations and other appropriate action.  (ECF No. 18.)  On November 10, the parties appeared before the Court for the hearing on the matter.

///

## II.

## LEGAL STANDARD

A defendant may remove a matter to federal court if the district court would have original jurisdiction.  See 28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal district courts have original jurisdiction over state law civil actions between citizens of different states in which the amount in controversy exceeds $75,000 exclusive of costs and interests.

---

[2] All references to §§ 1790 et seq. herein shall refer to the California Civil Code.

28 U.S.C. § 1332(a)(1).  A motion to remand is the proper procedure to challenge a removal based on lack of jurisdiction.  28 U.S.C. § 1447.

Ultimately, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute."  California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); see also Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper.").  Thus, if there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court.  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**III.**

**DISCUSSION**

Plaintiff seeks remand on the basis that Defendant has not established the amount in controversy exceeds $75,000 or that complete diversity exists between the parties.  (ECF No. 11-2.)  Plaintiff does not dispute the timeliness of the removal notice or other removal requirements.  (See generally id.)  The parties additionally appear to dispute the evidentiary burden on removal and remand, specifically with respect to whether Plaintiff was required to produce any rebuttal evidence in response to Defendant's arguments and evidence on removal.  Accordingly, the Court will address this dispute by clarifying the evidentiary burden of the parties on removal and remand.  Thereafter, the Court will address the diversity of the parties and the amount in controversy arguments.

**A.    Evidentiary Burden of Proof**

As an initial matter, the Court will address the parties' apparent dispute regarding evidentiary burdens.  Defendant argues Plaintiff's failure to submit any evidence to rebut its prima facie case of domicile necessitates a finding of diversity of citizenship.  Defendant further argues its actual damages valuation should be applied to the amount in controversy calculations because Plaintiff did not submit any rebuttal evidence.  Plaintiff acknowledges he did not submit any

3

1  evidence in support of remand but argues Defendant's burden-shifting argument is unavailing
2  because Defendant bears the burden of establishing removal jurisdiction at all times.  The parties
3  both reiterated these points at the hearing on the motion.

4       As previously noted, removal requires that the moving party carry "the burden of
5  establishing removal."  Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006).
6  While the initial notice of removal "need not contain evidentiary submissions," Dart Cherokee
7  Basin Operating Co., LLC v. Owens (Dart Cherokee), 574 U.S. 81, 84 (2014), removal allegations
8  only remain undisturbed until "contested by the plaintiff or questioned by the court."  Id. at 87–88.

9       Once a plaintiff has challenged removal, as here, by moving to remand, the Supreme Court
10  explained that "both sides submit proof and the court decides" whether jurisdiction has been met
11  by a preponderance of the evidence.  Id. at 88.  The type of evidence to be submitted by the parties
12  "includ[es] affidavits or declarations, or other summary-judgment-type evidence," which prevents
13  the establishment of "removal jurisdiction by mere speculation and conjecture."  Ibarra v. Manheim
14  Inv., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).  However, the Ninth Circuit has observed, "the
15  Supreme Court [in Dart Cherokee] did not decide the procedure for each side to submit proof on
16  remand," and indicated that determination of "a reasonable procedure" in which "each side has a
17  fair opportunity to submit proof" remains within the province of the district courts.  Id. at 1200.

18       The Ninth Circuit has also carefully distinguished a plaintiff's challenge to removal
19  jurisdiction based on a "facial" versus "factual" attack.  See Salter v. Quality Carriers, Inc., 974
20  F.3d 959, 964–65 (9th Cir. 2020) (discussing Leite v. Crane Co., 749 F.3d 1117 (9th Cir. 2014),
21  and determining the plaintiff had asserted a facial, not factual challenge).  "A 'facial' attack accepts
22  the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke
23  federal jurisdiction.' "  Id. (citations and internal quotations omitted).  A factual attack "contests the
24  truth of the . . . allegations" themselves.  Id.  In Harris v. KM Industries, Inc., the Ninth Circuit
25  demonstrated it is possible for a plaintiff to assert a factual challenge to removal jurisdiction without
26  submitting rebuttal evidence, where the challenge successfully shows the defendant has not met its
27  preponderance burden.  Harris, 980 F.3d 694, 700 (9th Cir. 2020).

28       This approach is akin to the procedure in the summary judgment context whereby, if the

4

1    party with the initial burden of production fails to carry its burden, the other party "has no obligation

2    to produce anything."  See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099,

3    1102–03 (9th Cir. 2000); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (where the

4    nonmoving party bears the burden of proof on a dispositive issue, motion for summary judgment

5    may be made "with or without supporting affidavits").  Thus, Plaintiff is not required to submit

6    rebuttal evidence to factually challenge Defendant's removal assumptions.  See Harris, 980 F.3d at

7    700; Ibarra, 775 F.3d at 1199.  Rather, Defendant bears "the burden of establishing removal,"

8    Abrego Abrego, 443 F.3d at 685, 692, and this preponderance burden does not shift to Plaintiff at

9    any time.  Id.; Harris, 980 F.3d at 701.  Therefore, while Plaintiff *may* rebut Defendant's evidence

10   with his own evidence under Dart Cherokee, he does not *necessarily* need to do so in order to

11   prevail on his motion for remand.  Harris, 980 F.3d at 700.

12        Nevertheless, if Plaintiff declines to submit any evidence when moving to remand and

13   instead elects to rest solely on the facial or factual arguments that Defendant has not met its

14   preponderance burden, he does so at his own risk.  This is because the Court's determination of

15   whether the removal burden is met is based on a preponderance of all of the evidence — both

16   Plaintiff's and Defendant's alike.  See Arias v. Residence Inn by Marriott, 936 F.3d 920, 925 (9th

17   Cir. 2019) (quoting Dart Cherokee, 574 U.S. at 88) (when removal is challenged, "both sides submit

18   proof and the court decides, by a preponderance of the evidence" whether the elements of removal

19   have been satisfied).  Moreover, where — as here — both parties were afforded the opportunity to

20   place evidence on the record supporting their respective positions as to removal, the record is

21   deemed closed and "further factfinding is not required."  Harris, 980 F.3d at 702.  In other words,

22   if Plaintiff waives his opportunity to submit evidence in support of his position and the Court

23   ultimately concludes the removal evidence preponderates, then remand must be denied.  See, e.g.,

24   Arias, 936 F.3d at 927 (in CAFA removal, "[w]here a removing defendant has shown potential

25   recovery 'could exceed $5 million and the [p]laintiff has neither acknowledged nor sought to

26   establish that the class recovery is potentially any less,' the defendant 'has borne its burden to show

27   the amount in controversy exceeds $5 million.'") (quoting Lewis v. Verizon Commc'ns, Inc., 627

28   F.3d 395, 401 (9th Cir. 2010)).

Applying the aforementioned standard, the Court will evaluate whether Defendant's evidence and the language of the complaint establishes, by a preponderance of the evidence, complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

### B.     Diversity of Citizenship

Section 1332 requires complete diversity of citizenship. 28 U.S.C. § 1332(a). The presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Abrego Abrego, 443 F.3d at 679 (citations omitted). "The natural person's state citizenship is then determined by her state of domicile, not her state of residence." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001) (a person's residency, alone, does not establish domicile and cannot establish citizenship for diversity jurisdiction purposes). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." Id. (citing Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986)). "[A]n LLC is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).

In its notice of removal, Defendant alleged that Plaintiff is "a citizen and resident of California" who, "based on belief and information, has no intention to leave California." (ECF No. 1 ¶ 33.) Additionally, Defendant submitted a party-search report from TransUnion that shows Plaintiff has resided in Stanislaus County, California since September 2000, i.e., over twenty-one years. (Ex. XX, ECF No. 1-50.) The TransUnion report also reflects a number of other addresses attributed to Plaintiff located in Santa Clara County and Alameda County, California between 1989 and 2020 but does not identify any address history in any other state; it reflects that Plaintiff has a California driver's license and no driver's license from any other state; and it indicates Plaintiff's social security number was issued in California in 1989. (Id.) Finally, Defendant proffered evidence that it is a limited liability corporation organized under the laws of Delaware with its principal place of business in Michigan. (See ECF No. 14 at 16–17.) Accepting all uncontested allegations in the notice of removal as true, Arias, 936 F.3d at 925, Defendant has adequately alleged diversity of citizenship of the parties.

In his remand motion, Plaintiff does not dispute Defendant's citizenship or the showing that

1  he resides in California. Nor does Plaintiff challenge the admissibility or accuracy of Defendant's

2  evidence. Instead, Plaintiff challenges Defendant's allegation of diversity solely on the basis that

3  Defendant has not submitted evidence of Plaintiff's citizenship/domicile, only *residence*, and an

4  evidentiary showing of residence alone is insufficient because residency is not equivalent to

5  citizenship.[3] (ECF No. 11-2 at 18–20.) Nonetheless, Plaintiff's argument is unavailing, as follows.

6        Notably, the Ninth Circuit rejected a very similar argument in a Class Action Fairness Act

7  case that is analogous to the instant case with respect to Plaintiff's challenge to Defendant's removal

8  based on diversity of citizenship. In Ehrman v. Cox Communications, Inc., 932 F.3d 1223 (9th Cir.

9  2019), the Ninth Circuit found the district court erred in requiring the defendant to submit evidence

10  to prove its citizenship allegations because the plaintiff had asserted a facial, not factual, challenge.

11  Id. at 1229. In Ehrman, as here, the complaint admitted the representative plaintiff was a resident

12  of California. In its notice of removal, the defendant alleged it "is informed and believes, and on

13  that basis alleges, that [Ehrman] is a citizen of the state in which he resides, as alleged in the

14  Complaint." Id. at 1227. In his remand motion, Ehrman argued the defendant's allegations of

15  citizenship were insufficient because they relied "purely on an allegation of residency and [on]

16  'information and belief.'" Id. at 1226. The Ninth Circuit noted Ehrman's argument constituted a

17  facial, not factual challenge to the defendant's notice of removal. Id. at 1228. Accordingly, the

18  Ninth Circuit reversed the district court's grant of remand on this basis. Id. at 1229.

19        As in Ehrman, Plaintiff makes the same argument here that Defendant's allegation of

20  citizenship based on information and belief is insufficient to establish diversity because Defendant

21  did not produce any evidence of citizenship. For the same reasons articulated by the Ninth Circuit,

22  however, this is a facial — not factual — challenge to jurisdiction. Plaintiff affirmatively alleges

23  he resides in California and makes no effort to argue, let alone provide evidence, that he is

24  domiciled anywhere other than California. Accordingly, the Court rejects Plaintiff's argument that

25  Defendant failed to submit evidence of citizenship — because no evidence of citizenship was

26  required — and finds Defendant's allegations of Plaintiff's citizenship are sufficient. See generally

27  id.

28  [3] At the hearing on the motion, counsel for Plaintiff reiterated this argument.

7

In moving to remand, Plaintiff relies on two unpublished cases arising from the Central District of California, <u>Metropoulos v. BMW of N. Am., LLC</u>, CV 17-982 PA (ASx), 2017 WL 564205 (C.D. Cal. Feb. 9, 2017), and <u>Houston v. Bank of Am.</u>, No. CV 14-02786 MMM (AJWx), 2014 WL 2958216 (C.D. Cal. Jun. 25, 2014), which distinguish residency from citizenship and expressly require evidence of the latter to satisfy diversity.[4]  (ECF No. 11 at 18–20); <u>see</u> <u>Houston</u>, 2014 WL 2958216, at *3 (holding "where a defendant's sole basis for pleading a plaintiff's citizenship in a notice of removal are allegations of plaintiff's residency in the complaint, . . . the defendant has not met its burden of establishing plaintiff's citizenship.").  But <u>Metropoulous</u> and <u>Houston</u> pre-date <u>Ehrman</u> and are inconsistent with the Ninth Circuit's ruling.  Indeed, the Central District has more recently rejected the reasoning in <u>Metropoulous</u> and <u>Houston</u>, in light of the Ninth Circuit's ruling in <u>Ehrman</u>.  <u>See</u>, <u>e.g.</u>, <u>Lopez v. Ford Motor Co.</u>, No. 8:20-cv-00186-JLS-JDE, 2020 WL 1922588 (C.D. Cal. Apr. 21, 2020) (citing <u>Holbrook v. Ford Motor Co.</u>, No. CV 20-840-GW-PJWx, 2020 WL 1809667, at *2 (C.D. Cal. Apr. 9, 2020) (collecting cases and explaining that since <u>Erhman</u>, courts in the Central District have found such citizenship allegations to be satisfactory)); <u>see also</u> <u>Ervin v. Ballard Marine Constr., Inc.</u>, No. 16-cv-02931-WHO, 2016 WL 4239710, at *3 (N.D. Cal. Aug. 11, 2016) (collecting Northern District cases in which diversity was deemed satisfied based on assertions of residence, absent evidence about domicile to the contrary).  Therefore, Plaintiff's reliance on <u>Metropoulous</u> and <u>Houston</u> is unavailing.

Furthermore, even if Plaintiff's challenge to citizenship were construed as a factual one, the Court is also satisfied that Defendant met its preponderance burden.  As the Court noted, citizenship is based on domicile, which is a person's permanent place of residency, where he resides with the intention to remain or return.  <u>Kanter</u>, 265 F.3d at 857; <u>see also</u> <u>Gilbert v. David</u>, 235 U.S. 561, 569 (1915).  While residency is distinct from domicile, the Supreme Court and numerous other courts have treated a person's residence as prima facie evidence of his domicile.  <u>See</u>, <u>e.g.</u>, <u>Anderson v. Watts</u>, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary."); <u>Hollinger v. Home State Mut. Ins. Co.</u>, 654 F.3d 564, 571

---

[4] However, counsel conceded at the hearing on the motion that, if <u>Metropoulos</u> and <u>Houston</u> (and their line of reasoning) were deemed unpersuasive, Plaintiff had no other basis for challenging diversity of citizenship.

1   (5th Cir. 2014) (per curian) ("Evidence of a person's place of residence, however, is prima facie

2   proof of his domicile." (internal citations omitted)); 13E Wright & Miller, Federal Practice and

3   Procedure § 3612 n.28 (3d ed. 2013) ("It is assumed . . . that a person's current residence is also

4   his domicile . . .")).  Further, the Ninth Circuit has accepted, without adopting, the "presumption of

5   continuing domicile," which provides that "once established, a person's state of domicile continues

6   unless rebutted with sufficient evidence of change."  Mondragon v. Capital One Auto Fin., 736

7   F.3d 880, 886 (9th Cir. 2013).

8          Here, the Court finds the TransUnion report showing Plaintiff has a California driver's

9   license, has resided in California for over thirty years (including at the time of removal), and has

10  not established residency in any other state during that time — combined with Defendant's

11  averment that Plaintiff, "based on belief and information, has no intention to leave California" —

12  constitutes prima facie evidence that Plaintiff is domiciled in California.  Anderson, 138 U.S. at

13  706; Hollinger, 654 F.3d at 571.  Applying the "presumption of continuing domicile," Plaintiff's

14  domicile is presumed to be California unless Plaintiff rebuts the presumption "with sufficient

15  evidence of change."  Mondragon, 736 F.3d at 886.  Here, however, Plaintiff has produced no

16  evidence to refute or question the veracity of Defendant's evidence with respect to domicile.

17  Indeed, as Defendant correctly points out, Plaintiff does not submit even a declaration to clarify his

18  "domiciliary intent" with respect to California or indicate a change of residence.  Nor, as the Court

19  previously noted, does Plaintiff even attempt to *argue* he is not domiciled in California.  Indeed,

20  Plaintiff did not make any additional arguments with respect to domicile at the hearing on the

21  motion.  Accordingly, the presumption of domicile which Defendant has established, remains

22  unrefuted.

23         For the foregoing reasons, the Court finds Defendant has adequately met its burden of

24  establishing Plaintiff is domiciled in California and Defendant is not.  Because there is no overlap

25  in citizenship between Plaintiff and Defendant, the Court finds that complete diversity is satisfied

26  in this case.

27         **C.     Amount in Controversy**

28         The amount in controversy is an "estimate of the total amount in dispute."  Lewis, 627 F.3d

9

1   at 400.  It is not "a prospective assessment of defendant's liability."  Id.  Rather, the court must

2   "accept[ ] the allegations contained in the complaint as true and assume[ ] the jury will return a

3   verdict in the plaintiff's favor on every claim."  Henry v. Cent. Freight Lines, Inc., 692 F. App'x

4   806, 807 (9th Cir. 2017).  When, as here, the plaintiff has not specified an amount in controversy

5   in the complaint, the removing party bears the burden of showing by a preponderance of the

6   evidence that the amount in controversy exceeds the jurisdictional threshold.  See Guglielmino v.

7   McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007).  Thus, the preponderance burden requires

8   the defendant to show it is "more likely than not" that the amount in controversy exceeds the

9   jurisdictional amount.  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996);

10  Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013) (same).

11          To determine if the amount in controversy is met, the district court considers the complaint,

12  allegations in the removal petition, "summary-judgment-type evidence relevant to the amount in

13  controversy at the time of removal," and evidence filed in opposition to the motion to remand.

14  Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (citation omitted); Lenau v. Bank of

15  Am., N.A., 131 F. Supp. 3d 1003, 1005 (E.D. Cal. 2015); Cohn v. Petsmart, Inc., 281 F.3d 837,

16  840 n.1 (9th Cir. 2002) (per curiam).  Both parties may submit evidence supporting the amount in

17  controversy before the district court rules.  Ibarra, 775 F.3d at 1197; see also Salter, 974 F.3d at

18  963.

19          "[C]ourts first look to the complaint.  Generally, the sum claimed by the plaintiff controls

20  if the claim is apparently made in good faith."  Ibarra, 775 F.3d at 1197 (quoting St. Paul Mercury

21  Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) (internal quotations omitted)); see also

22  Campbell v. Vitran Exp., Inc., 471 F. App'x 646, 648 (9th Cir. 2012) ("the facts alleged in the

23  complaint [are] taken as true.").  The defendant may "rely on reasonable assumptions underlying

24  the defendant's theory of damages exposure."  Garcia v. FCA US LLC, 2016 WL 4445337, at *2

25  (E.D. Cal. Aug. 24, 2016) (citation and internal quotations omitted); see also Salter, 974 F.3d at

26  963 ("when a defendant's allegations of removal jurisdiction are challenged, the defendant's

27  showing on the amount in controversy may rely on reasonable assumptions.").  However,

28  "assumptions cannot be pulled from thin air but need some reasonable ground underlying them."

1   <u>Arias</u>, 936 F.3d at 925 (quoting <u>Ibarra</u>, 775 F.3d at 1199) (internal quotations omitted).  More

2   specifically, a reasonable assumption must be founded on the allegations of the complaint.  <u>See id.</u>

3   (notice of removal must include "a plausible allegation that the amount in controversy exceeds the

4   jurisdictional threshold."); <u>see also</u> <u>Ibarra</u>, 775 F.3d at 1197 (citing with approval <u>Pretka v. Kolter</u>

5   <u>City Plaza II, Inc.</u>, 608 F.3d 744, 754, 771–72 (11th Cir. 2010) (holding that "when a removing

6   defendant makes specific factual allegations establishing jurisdiction and can support them . . . with

7   evidence combined with reasonable deductions, reasonable inferences, or other reasonable

8   extrapolations[,] [t]hat kind of reasoning is not akin to conjecture, speculation, or star gazing.")).

9   Finally, the Ninth Circuit has held that, once the preponderance standard is triggered, if "the

10  evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court

11  jurisdiction."  <u>Ibarra</u>, 775 F.3d at 1199.

12        As previously noted, Plaintiff asserts claims against Defendant for violations of the Song-

13  Beverly Act and for fraud by omission.  (Compl. ¶¶ 26–57.)  Defendant seeks removal based on

14  the estimated amount in controversy related to Plaintiff's Song-Beverly Act claims only.  Based on

15  the allegations in the complaint, Defendant maintains Plaintiff's damages plus statutory penalties

16  results in an amount in controversy of at least $75,003.00.  (ECF No. 1 at 7.)  Alternatively,

17  Defendant submits evidence that Plaintiff has made payments totaling $31,296.78 on the sales

18  contract for the vehicle.  (<u>Id.</u>)  Based on this figure, and adding statutory penalties, Defendant

19  estimates the amount in controversy totals at least $93,890.34.  (<u>Id.</u>)  Defendant additionally asserts

20  attorneys' fees, which were not included in Defendant's calculations but are permissible pursuant

21  to the Song-Beverly Act, can reasonably be expected to amount to at least $35,000.00.  (<u>Id.</u>)

22  Therefore, Defendant maintains the amount in controversy has been met.

23        Plaintiff disputes Defendant's calculations with respect to actual damages, penalties, and

24  attorney's fees, as discussed herein.

25        1.      <u>Actual Damages Under the Song-Beverly Act</u>

26        Defendant identifies two different valuations of Plaintiff's alleged actual damages that it

27  used to calculate the amount in controversy with respect to Plaintiff's Song-Beverly Act claims:

28  (1) $25,001.00, based on the language in the complaint (Compl. ¶¶ 11, 29); and (2) $31,296.78,

1   based on evidence proffered by Defendant in its notice of removal (ECF No. 1 at 7; Decl. of

2   Tammara N. Bokmuller in supp. of Def.'s Not. of Removal ("Bokmuller Decl.") ¶¶ 8, 15; Ex. F,

3   ECF No. 1-7).  Plaintiff contests both valuations of purported actual damages.  The Court will

4   address each argument in turn.

5           a.      **Reasonableness of "Damages" Assumption Based on Allegations**

6           Plaintiff references unspecified "damages" twice in the complaint: once in the "factual

7   background" section of the complaint (Compl. ¶ 11) and once within the context of the specific

8   allegations for his first cause of action (violations of the Song-Beverly Act) (id. at ¶ 29).  With

9   respect to his factual background allegations, after identifying the various purported defects

10  occurring with respect to the vehicle, Plaintiff alleges he "suffered damages in a sum to be proven

11  at trial in an amount that is not less than $25,001.00."  (See id. at ¶¶ 10–11.)  In the first cause of

12  action, Plaintiff alleges he was damaged by Defendant's failure to comply with applicable

13  warranties and repair the vehicle, then he alleges, again, that he "suffered damages in a sum to be

14  proven at trial in an amount not less than $25,001.00."  (See id. at ¶¶ 27–29.)  The prayer for relief,

15  by contrast, seeks "actual damages" as well as restitution, civil penalties, consequential and

16  incidental damages, costs and attorneys' fees, punitive damages, and prejudgment interest.  (Id. at

17  Prayer.)  Other than paragraphs 11 and 29, the complaint does not identify any other dollar amounts.

18  (See generally id.)

19          Relying on the allegation that Plaintiff "suffered damages" of "not less than $25,001.00"

20  and the language in the complaint, Defendant made the assumption that Plaintiff's reference to

21  "damages" was an estimate of actual damages, exclusive of penalties, punitive damages, fees or

22  costs.  (See ECF No. 1 at 5.)  Relying on this assumption, Defendant calculated the maximum

23  statutory penalty amount based on actual damages of $25,001.00 ($25,001.00 x 2 = $50,002.00),

24  which it then added to the presumed actual damages of $25,001.00 to reach its proffered amount in

25  controversy, $75,003.00.  (Id. at 7.)

26          Plaintiff challenges the reasonableness of Defendant's assumption that Plaintiff's allegation

27  of "damages" (Compl. ¶¶ 11, 29) was meant to be exclusive of penalties, punitive damages, fees

28  and costs.  (ECF No. 11-2 at 9–11.)  More specifically, Plaintiff argues the complaint does not

1   expressly state the $25,001.00 amount represents Plaintiff's alleged actual damages; rather, because

2   of the discrepancy between the allegation that Plaintiff suffered "damages" and the prayer seeking

3   "actual damages," Plaintiff argues the complaint is ambiguous as to what type of damages the

4   $25,001.00 represents.  Indeed, in his remand motion, Plaintiff maintains the $25,001.00 amount

5   was meant to be inclusive of all damages, fees, and penalties.  (Id. at 10.)  Furthermore, because

6   the complaint does not provide a dollar amount exceeding $75,000.00 on its face, Plaintiff argues

7   Defendant must establish the amount in controversy exceeds $75,000.00 by a preponderance of the

8   evidence.  And, because Defendant did not provide any evidence to support its assumption that

9   "$25,001.00 is a reasonably accurate estimate of Plaintiff's actual damages" (ECF No. 11-2 at 11

10  (emphasis removed)), Plaintiff contends Defendant did not meet its preponderance burden.  The

11  Court, however, is not persuaded by Plaintiff's arguments.

12      First, the Court notes Plaintiff's statement regarding the preponderance burden is

13  inaccurate.  As the Court previously noted, Defendant may meet its preponderance burden by

14  providing not just summary-judgment-type evidence, but "evidence combined with reasonable

15  deductions, reasonable inferences, or other reasonable extrapolations" founded on the allegations

16  of the complaint.  Ibarra, 775 F.3d at 1197 (citing Pretka, 608 F.3d at 754, 771–72); see also Arias,

17  936 F.3d at 925.  As to the language of the complaint, the Court finds Defendant's assumption is

18  plausibly inferred from a plain reading of the allegations, whereas Plaintiff's proposed

19  interpretation of the "damages" allegation as inclusive of actual and punitive damages, fees, and

20  penalties is neither plausible nor supported in law.

21      Notably, in Washington County Unified Sewerage Agency v. First State Insurance

22  Company, a breach of contract action in which the defendant's liability hinged on whether the word

23  "damages" encompassed civil penalties, the Ninth Circuit expressly found it did not.  81 F.3d 171

24  (9th Cir. 1996) (collecting cases).  Quoting with approval the district court's findings in Travelers

25  Insurance Company v. Waltham Industrial Laboratories Corp., the Ninth Circuit explained:

26          It is beyond peradventure that damages are distinct from penalties.
            The term "damages" refers to the loss suffered by an injured party
27          expressed in a dollar amount.  Unlike damages, penalties are not
            designed to compensate an injured party, but are designed to deter
28          conduct deemed undesirable by the legislature.

1   Id. (quoting Travelers Ins. Co., 722 F. Supp. 814, 827–28 (D. Mass. 1988), aff'd in part, rev'd in

2   part on other grounds, 833 F.2d 1092, 1099 (1st Cir. 1989)); see also Brady v. Mercedes-Benz

3   USA, Inc., 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (noting the Song-Beverly Act does not

4   provide for punitive damages but courts have held that the civil penalty under Song-Beverly is akin

5   to punitive damages, because both have the dual effect of punishment and deterrence for

6   defendants) (citing Davenport v. Mutual Ben. Health & Acc. Ass'n, 325 F.2d 785, 787 (9th Cir.

7   1963)); Guglielmino, 506 F.3d at 701 (finding attorneys' fees, accounting of moneys, back taxes

8   and benefits "do not fall comfortably within the realm of 'damages' ").    Based on the

9   aforementioned authorities, the Court cannot conclude it is reasonable to infer that Plaintiff's

10  reference to "damages" was meant to include actual damages as well as civil penalties, punitive

11  damages, and attorneys' fees.[5]

12          Further, a plain reading of the complaint does not suggest such an interpretation.  While

13  Plaintiff's "damages" allegation is not specially identified as "actual damages" (see Compl. ¶ 29),

14  Plaintiff's allegations seeking civil penalties are remarkably clear — and separate from Plaintiff's

15  "damages" allegation.  (See id. at ¶¶ 30, 31, 32.)  The separation of paragraphs reasonably connotes

16  the separate forms of relief Plaintiff seeks.  Similarly, the wording of Plaintiff's allegation that he

17  "suffered damages . . . to be proven" rather than, for example, he "is entitled to damages" suggests

18  the amount referenced in paragraph 29 pertains to damages resulting from the actual harm caused

19  by the purported wrongful act.  This, too, indicates the "damages" Plaintiff identifies in paragraph

20  29 are distinct from the civil penalties requested in paragraphs 30, 31, and 32 — penalties which

21  are statutorily awarded and which, as Plaintiff's counsel noted at the hearing, constitute a mere

22  "multiplier of damages" (not damages themselves).  Finally, the Court notes other courts that have

23  considered an identical "damages" allegation used by Plaintiff's counsel have also determined, for

24  _____

25  [5] For this reason, and in light of the fact that they are neither published nor arise from this District, the cases proffered
    in support of Plaintiff's argument are unpersuasive.  See Schneider v. Ford Motor Co., 441 F. Supp. 3d 909 (N.D. Cal.
26  2020); Steeg v. Ford Motor Co., No. 19-CV-05833-LHK, 2020 WL 2121508, at *3 (N.D. Cal. May 5, 2020);
    Feichtmann v. FCA US LLC, No. 5:20-cv-01790-EJD, 2020 WL 3277479, at *3 (N.D. Cal. Jun. 18, 2020); Edwards
27  v. Ford Motor Co., 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016); Limon-Gonzalez v. Kia Motors Am., Inc., No.
    CV 20-4381 PA (JPRx), 2020 WL 3790838, at *2 (C.D. Cal. Jul. 7, 2020); Mullin v. FCA US LLC, CV 20-2061-
    RSWL-PJW, 2020 WL 2509081, *3 (C.D. Cal. May 14, 2020); Vallejo v. Gen. Motors, LLC, No. CV 19-10631-DMG
28  (ASx), 2020 WL 1164949, at *3 (C.D. Cal. Mar. 11, 2020).

purposes of the amount in controversy burden, that it was reasonable for the defendant to assume the allegation pertained to actual damages only.  See, e.g., Chism v. FCA US LLC, No. CV 19-9082 FMO (PJWx), 2020 WL 777300, *2 (C.D. Cal. Feb. 18, 2020); McDonald v. BMW of North America, LLC, No. 3:17-CV-2011-CAB-BLM, 2017 WL 5843385, *1–2 (S.D. Cal. Nov. 28, 2017) (rejecting removal as untimely where amount in controversy was apparent "on the face of the complaint" and defendant simply "could have multiplied $25,001 (the minimum amount of damages alleged in the complaint) by three to determine that Plaintiff seeks, at a minimum, recovery in excess of $75,000" without need for "any extrapolations, subjective knowledge, or evidence outside of the complaint").

For these reasons, the Court finds Defendant's assumption that Plaintiff's reference to "damages" was an estimate of actual damages, exclusive of penalties, punitive damages, fees and costs was reasonably based on the language of the complaint.  Accordingly, Defendant has adequately met its burden to establish actual damages (based on the complaint) in the amount of $25,001.00.

**b.      Evidentiary Support for Estimated Actual Damages**

In addition to proffering calculations based on the allegations in the complaint, Defendant proffers an alternative calculation that is based on the relevant retail installment sales contract. (ECF No. 1 at 7; Bokmuller Decl. ¶ 15; Ex. F, ECF No. 1-7.)  This contract lists the amount financed of $33,065.07, the deferred down payment of $1,500.00, and the finance charge of $8,663.97, for a total purchase price of $43,229.04.  (Ex. F at 2.)  Per the contract, Plaintiff agreed to make 71 payments of $579.57, starting August 29, 2016 and ending July 29, 2022.  (Id.)  In the Bokmuller declaration, counsel avers that based on the contract and calculating the payments made to date, Plaintiff has paid $31,296.78 for the vehicle.  (Bokmuller Decl. ¶ 8.)  Based on this evidence, Defendant provides an amount in controversy calculation for actual damages in the amount of $31,296.78.  (Id.; ECF No. 1 at 7.)

Plaintiff does not address the Bokmuller declaration.  Nor does Plaintiff challenge the admissibility, authenticity, or veracity of the attached contract or the contents asserted therein. Instead, Plaintiff argues the $31,296.78 figure is a "completely speculatory" valuation of actual

1   damages because Defendant failed to account for mileage offsets in its calculation pursuant to §

2   1793.2(d)(2).[6]  (See ECF No. 11 at 11–14.)  The Court is unpersuaded by this argument.

3        In an action brought pursuant to the Song-Beverly Act, a prevailing plaintiff may elect to

4   pursue a number of various forms of recovery for actual damages.  For example, a buyer may

5   demand service and repair of the defective product (§ 1793.2(c)); replacement with a new product

6   (§ 1793.2(d)(1)(A)); restitution of the purchase price, less that amount directly attributable to use

7   by the buyer prior to the discovery of the defect (§ 1793.2(d)(1)(B)); reimbursement of fees

8   associated with repairs (such as reasonable repair, towing and rental car costs actually incurred)

9   and collateral charges (such as sales or use tax, license fees, registration fees, and other official fees

10  (id.; § 1794(b)(2)); and/or "pursue other rights or remedies . . . under any other law" (§

11  1793.2(d)(2)(C)).

12       The complaint alleges "Plaintiff has rightfully rejected and/or justifiably revoked

13  acceptance of the Vehicle, and has exercised a right to cancel the purchase." (Compl. ¶ 36.)  As a

14  result, one of the remedies Plaintiff seeks for Defendant's alleged violations of the Song-Beverly

15  Act is "the entire contract price" pursuant to § 1794(b)(1).  (Id.)  Section 1794(b)(1) provides that,

16  where a buyer harmed by violations of the Song-Beverly Act "has rightfully rejected or justifiably

17  revoked acceptance of the goods or has exercised any right to cancel the sale," he may recover the

18  full price that has been paid, as well as various damages related to any repudiation or

19  nonperformance by the seller on the contract.  Cal. Civ. Code §§ 1794(b)(1) (citing Cal. Com. Code

20  §§ 2711, 2712, and 2713).

21       Here, Defendant has identified the full price that Plaintiff has paid, $31,296.78.  At the

22  hearing on the motion, Plaintiff again argued this figure was "speculative," but provided no

23  substantive argument challenging it.  As noted, Plaintiff did not challenge in any way the

24  admissibility of Defendant's evidence and the Court finds the Bokmuller declaration and the retail

25  installment sales contract satisfy the summary-judgment-type evidence standard for purposes of the

26

27  [6] Sections 1793.2(d)(2)(B)–(C) provide that, in the case of restitution, the amount to be repaid is the actual price paid or payable by the buyer, reduced by the amount directly attributable to use (as measured by miles driven) by the buyer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles.  Cal. Civ.

28  Code §§ 1793.2(d)(2)(B)–(C).

16

1   amount in controversy inquiry. Moreover, Plaintiff's concession that he "probably paid the

2   payments on the contract, on time," lends further support to a finding that Defendant's estimate of

3   payments made was reasonable. Thus, the Court concludes Defendant has submitted sufficient

4   evidentiary support for the contention that the full price Plaintiff paid on the contract was

5   $31,296.78.

6        Based on the evidence of Plaintiff's payments on the contract, and Plaintiff's allegation that

7   he seeks "remedies set forth in California Civil Code section 1794(b)(1), including the entire

8   contract price" based on violations of § 1793.2(b) (Compl. ¶ 36), Defendant makes the assumption

9   that the $31,296.78 figure is a reasonable estimate of Plaintiff's actual damages. The Court finds

10  this estimate is properly based on "evidence combined with reasonable deductions, reasonable

11  inferences, or other reasonable extrapolations" founded on the allegations of the complaint. Ibarra,

12  775 F.3d at 1197 (citing Pretka, 608 F.3d at 754, 771–72); see also Arias, 936 F.3d at 925.

13       To the extent Plaintiff argues this figure is speculative when proffered as an estimate of

14  actual damages because Defendant failed to account for the mileage offsets described in §

15  1793.2(d)(2)(C), the Court finds Plaintiff's argument is unavailing. As the Court noted before, it

16  must accept the allegations in the complaint as true and assume Plaintiff will prevail on every

17  claim." Henry, 692 F. App'x at 807. While Plaintiff seeks reimbursement pursuant to §

18  1793.2(d)(2)(C) (Claim One), he also expressly seeks damages "including the contract price"

19  pursuant to § 1794(b)(1) (as referenced in § 1793.2(d)(2)(A)) (Claim Two). Plaintiff identifies no

20  authority, nor is the Court aware of any, that limits a defendant to estimating actual damages based

21  on only one particular theory of relief when the plaintiff plainly identifies several alternative

22  theories in his complaint. Nor does the Court find the authorities cited by Plaintiff in support of its

23  offset argument — all unpublished cases, none of which arise from this District — are factually

24  apposite to the instant matter.[7]

25  _____

    [7] See, e.g., Maciel v. BMW of N. Am., LLC, No. CV 17-04268 SJO (AJWx), 2017 WL 8185859 (C.D. Cal., Aug. 7,
26  2017) (only evidence defendant provided was a conclusory declaration basing actual damages on purchase price with
    no calculations or estimates); Mullin, 2020 WL 2509081 (does not discuss whether plaintiff pleaded any theories of
27  relief other than restitution requiring calculations of offsets); Cox v. Kia Motors Am., Inc., No. 20-CV-02380-BLF,
    2020 WL 5814518, at *3–4 (N.D. Cal. Sept. 30, 2020) (same); D'Amico v. Ford Motor Co., No. CV 20-2985-CJC
28  (JCx), 2020 WL 2614610 (C.D. Cal. May 21, 2020) (at-issue vehicle was based on a lease rather than a purchase, and
    defendant relied on "manufacturer suggested retail price" for basis of calculations rather than the actual sales price, as

1        Furthermore, as the Court has noted, the amount in controversy is not "a prospective

2    assessment of defendant's liability," Lewis, 627 F.3d at 400, and Defendant need not "research,

3    state, and prove" Plaintiff's claims for damages.   Coleman v. Estes Express Lines, Inc., 730 F.

4    Supp. 2d 1141, 1147–48 (C.D. Cal. 2010) (citations and internal quotations omitted); see also In re

5    Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig., No. 18-ML-02814 AB (FFMx),

6    2018 WL 5905942, at *4 (C.D. Cal. Sept. 10, 2018) ("the amount in controversy is established by

7    what the plaintiff demands, not by any reductions that a defendant might achieve through its

8    defenses") (citing Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka, 599 F.3d 1102,

9    1108 (9th Cir. 2010) ("if a district court had to evaluate every possible defense that could reduce

10   recovery below the jurisdictional amount the district court would essentially have to decide the

11   merits of the case before it could determine if it had subject matter jurisdiction.")).   Rather, because

12   Plaintiff squarely puts the full amount he has paid on the vehicle into dispute under § 1794(b)(1)

13   (Compl. ¶ 36), Defendant's use of the figure $31,296.78 as an estimate of actual damages is

14   reasonable.   Lewis, 627 F.3d at 400.   On this record, the Court finds Defendant has met its burden

15   to establish by a preponderance of the evidence that the $31,296.78 figure is a reasonable estimate

16   of Plaintiff's actual damages.

17        Plaintiff did not submit argument or evidence identifying any alternative payment amounts

18   or offset calculations in its moving papers, reply briefing, or at the hearing on the motion to rebut

19   Defendant's proffered evidence.   Instead, Plaintiff merely reiterated that Defendant was required

20   to submit evidence of actual damages because Defendant has the burden of proof.   However, having

21   determined that Defendant did submit sufficient evidence of actual damages and thus met its burden

22   of establishing estimated actual damages by a preponderance of the evidence, the Court next turns

23   to Plaintiff's evidence.   Here, Defendant's estimate of actual damages of $31,296.78 is unrefuted;

24   therefore, it remains reasonable.[8]

25   _____
     identified in an executed contract for the specific purchase of a new vehicle).

26   [8] The Court notes that, while Defendant did not submit any evidence with respect to offset calculations pursuant to §
     1793.2(d)(2)(C) in any of its briefings, Defendant acknowledged at the hearing on the motion that it has completed

27   these calculations based on a mileage offset of 15,650 miles.   It is unclear why Defendant chose not to submit evidence
     of this offset number in any of its pleadings alongside its other damages calculations.   Regardless, Plaintiff did not

28   challenge Defendant's proffered mileage offset number in any way, nor did he propose an alternative number in his
     briefings or at the hearing.   Therefore, the Court may alternatively accept as reasonable an actual damages calculation

2.      Civil Penalties

In addition to actual damages, a buyer who establishes a willful violation of the Song-Beverly Act may also recover a civil penalty of up to "two times the amount of actual damages." Cal. Civ. Code §§ 1794(c), (e)(1).

Plaintiff alleges he "is entitled to a civil penalty of two times Plaintiff's actual damages" arising from Defendant's purported Song-Beverly violations.  (Compl. ¶¶ 31, 37, 40, 44.)  The prayer similarly seeks "a civil penalty in the amount of two times Plaintiff's actual damages. . . ." (Id. at Prayer.)  Based on these allegations, Defendant calculated its amount in controversy figures by adding the full statutory penalty to Plaintiff's actual damages, as follows: $25,001.00 + ($25,001.00 x 2) = $75,003.00, as based on Plaintiff's allegations; alternatively, $31,296.78 + ($31,296.78 x 2) = $93,890.34, as based on the sales contract.  (ECF No. 1 at 7.)

In seeking to remand, Plaintiff argues Defendant submits no evidence — nor does the complaint include allegations — to support estimates inclusive of any penalties under Song-Beverly, let alone maximum penalties.  (ECF No. 11-2 at 14–15; ECF No. 15 at 8–9.)  Plaintiff further argues the penalties provision is merely a multiplier of damages and that Defendant's penalties estimate, which is derivative of the actual damages estimate, is speculative where the underlying actual damages estimate was also unsupported.  (ECF No. 11-2 at 15–16.)  The Court finds these arguments unpersuasive for the following reasons.

District courts in the Ninth Circuit are split on whether to include Song-Beverly Act civil penalties in calculations to assess the amount in controversy, taking into account a plaintiff's pleadings.  See Ferguson v. KIA Motors Am. Inc., No. 2:20-CV-01192-KJM-DB, 2021 WL 1997550, at *3 (E.D. Cal. May 19, 2021) (collecting and comparing cases in Southern and Central Districts and finding inclusion of penalties was warranted based on allegations).  Some courts do not require a defendant to provide evidence beyond pointing to claims arising under the Song-Beverly Act in the complaint; others require a defendant to point to specific allegations in the

---

of $37,591.21 based on the mileage offset figure provided by defense counsel at the hearing (Mileage Offset = [(15,650 miles/120,000) x contract purchase price $43,229.04] = $5,637.78; Actual Damages = $43,229.04 – $5,637.78).  Cal. Civ. Code § 1793.2(d)(2)(C); see also Brady, 243 F. Supp. 2d at 1008–09 (finding mileage offset should be applied to full purchase price of vehicle and not total payments made to date, as offset calculations based on 120,000 denominator presumably reflects the full life expectancy of a new vehicle).

1  complaint that support an award of punitive damages.  See id.; see also Lopez, 2020 WL 1922588,

2  at *2 ("Courts as a matter of law, calculate the amount in controversy based upon the maximum

3  amount of civil penalties available to plaintiff.") (citing Saulic v. Symantec Corp., No. SA CV 07-

4  610 AHS (PLAx), 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007) (collecting cases)).  Based

5  on Plaintiff's allegations, the Court finds that inclusion of civil penalties in calculating the amount

6  in controversy is appropriate in this case.

7      As an initial matter, the Court notes inclusion of at least *some* amount of penalties is,

8  contrary to Plaintiff's argument, warranted.  As noted above, in determining the amount in

9  controversy, the court must accept the allegations in the complaint as true and assume the jury will

10  return a verdict in Plaintiff's favor on every claim.  Henry, 692 F. App'x at 807.  Here, the complaint

11  plainly and repeatedly requests statutory penalties for the alleged violations of the Song-Beverly

12  Act. (Compl. ¶¶ 31, 37, 40, 44.)  Moreover, the complaint is replete with allegations of Defendant's

13  "willful" behavior, which is used to justify an award of both punitive damages and civil penalties,

14  which are often treated by courts as a form of punitive damages.  (See id. at ¶¶ 22, 30, 37, 40, 44,

15  50–57); see also Brady, 243 F. Supp. 2d at 1009 (finding penalties under Song-Beverly akin to

16  punitive damages); Chavez v. FCA US LLC, No. 2:19-cv-06003-ODW (GJSx), 2020 WL 468909,

17  at *2 (C.D. Cal. Jan. 27, 2020) ("A civil penalty is applicable only if a court determines that a

18  defendant's failure to comply with the Act is willful.").  Accordingly, the Court finds inclusion of

19  statutory penalties in the amount in controversy calculations is reasonably supported by the

20  language in the complaint.  Arias, 936 F.3d at 925; Ibarra, 775 F.3d at 1199.

21      Indeed, the Court finds the allegations in the complaint plainly support Defendant's

22  assumption that double penalties (the statutory maximum) should be included in the amount in

23  controversy calculations.  Plaintiff requests, multiple times and in no uncertain terms, "a civil

24  penalty of two times Plaintiff's actual damages" arising from Defendant's purported Song-Beverly

25  violations.[9]  (Compl. ¶¶ 31, 37, 40, 44.)  This "two times" language is also repeated in the prayer

[9] For this reason, the cases relied upon by Plaintiff to dispute double penalties are factually inapposite to the instant matter and therefore unavailing.  See, e.g., Castillo v. FCA US LLC, No. 19-CV-151-CAB-MDD, 2019 WL 6607006 (S.D. Cal. Dec. 5, 2019) (rejecting inclusion of penalties where defendant did not, among other things, point to any allegations in the complaint justifying such an award); Herko v. FCA US, LLC, No. 19-CV-2057 JLS (WVG), 2019 WL 5587140 (S.D. Cal. Oct. 30, 2019) (same); Makol v. Jaguar Land Rover N. Am., LLC, No. 18-cv-03414-NC, 2018

1  for relief.  (Id. at Prayer.)  As the Court previously noted, the amount in controversy is not "a

2  prospective assessment of defendant's liability," but an "estimate of the total amount in dispute."

3  Lewis, 627 F.3d at 400.  Further, in evaluating the amount in controversy, the Court must accept

4  Plaintiff's allegations as true and assume Plaintiff will be successful on all of his claims.  Henry,

5  692 F. App'x at 807.  Here, a plain reading of the complaint reveals Plaintiff seeks the maximum

6  statutory penalty for Song-Beverly Act violations.  Accordingly, the Court finds inclusion of double

7  penalties in the amount in controversy calculations is reasonably supported by the language in the

8  complaint.  Arias, 936 F.3d at 925; Ibarra, 775 F.3d at 1199.

9       Finally, with respect to Plaintiff's argument that the penalty calculations are impermissibly

10  speculative because they are derived from an unsupported actual damages valuation, the Court

11  again disagrees.  The Court has determined that Defendant sufficiently met its preponderance

12  burden to establish actual damages based on summary-judgment-style evidence and the language

13  of the complaint.[10]  Indeed, either of Defendant's actual damages estimates — $25,001.00, based

14  on the allegations in the complaint, or $31,296.78, based on Defendant's unchallenged evidence of

15  Plaintiff's payments on the vehicle — are reasonable under the preponderance standard.  Adding

16  double penalties to either of these potential actual damages calculations, the potential amount in

17  controversy estimate is $75,003.00 or $93,890.34, respectively.  Based on either of these

18  calculations, it is clear that Defendant has met its preponderance burden to establish Plaintiff's

19  potential recovery exceeds the threshold amount in controversy.[11]

20       3.    Attorneys' Fees

21       "[A] court must include future attorneys' fees recoverable by statute or contract when

22  assessing whether the amount-in-controversy requirement is met.  The defendant retains the burden,

23  however, of proving the amount of future attorneys' fees by a preponderance of the evidence."

24  WL 3194424 (N.D. Cal., Jun. 28, 2018) (same).

25  [10] For this reason, the cases relied upon by Plaintiff are factually inapposite to the instant matter and therefore
26  unavailing.  See, e.g., D'Amico, 2020 WL 2614610 (penalties estimate was speculative where court determined underlying actual damages estimate was speculative); Chavez, 2020 WL 468909 (same).

27  [11] The Court additionally notes that, even utilizing Plaintiff's preferred alternative method of recovery, based on actual damages calculated from restitution with a mileage offset, Defendant has met its preponderance burden to establish Plaintiff's potential recovery exceeds the threshold amount in controversy:  $37,591.21 + ($37,591.21 x 2) = $112,773.63.

1   Arias, 936 F.3d at 927 (internal quotation marks and citations omitted).  If the plaintiff is legally

2   entitled to future attorneys' fees if the action succeeds, "then there is no question that future

3   [attorneys' fees] are 'at stake' in the litigation."  Fritsch v. Swift Transp. Co. of Arizona, LLC, 899

4   F.3d 785, 794 (9th Cir. 2018).  However, "[a] district court may reject the defendant's attempts to

5   include future attorneys' fees in the amount in controversy if the defendant fails to satisfy [its]

6   burden of proof."  Id. at 795.

7       The Song-Beverly Act provides for an award of attorney's fees.  Cal. Civ. Code. §§ 1794(d),

8   (e)(1).  Plaintiff seeks attorneys' fees in the complaint but does not provide an estimate of the

9   amount of attorneys' fees sought.  (Compl. at Prayer.)  Therefore, attorneys' fees may be included

10  in the amount in controversy estimate, provided Defendant meets its preponderance burden with

11  respect to its proffered calculations.  Fritsch, 899 F.3d at 794–95.

12      Here, Defendant argues that attorneys' fees in this matter can reasonably be expected to

13  amount to at least $35,000.  (ECF No. 1 ¶ 27.)  Defendant appears to support this contention with

14  the Bokmuller declaration, which provides that Plaintiff's attorneys regularly request more than

15  $75,000 in Song-Beverly cases tried or prepared for trial.  (Bokmuller Decl. ¶ 9 (collecting cases).)

16  Counsel further avers that, based on her experience and knowledge of litigating Song-Beverly

17  cases, "it is not uncommon, and in fact quite regular, for attorney's fee and cost awards (or

18  resolutions through informal discussions with opposing counsel) to exceed $100,000."  (Id.)

19      Plaintiff challenges the competency of this evidence, arguing that defense counsel's

20  declaration is "manifestly self-serving, subjective, and conclusory" and that Defendant's fees

21  estimate arising therefrom is "purely speculative."  (ECF No. 11-2 at 16–17 (emphasis omitted).)

22  The court agrees that Defendant's attorneys' fees estimate is too speculative to establish the

23  threshold amount in controversy by a preponderance of the evidence.  Defense counsel's

24  declaration does not provide any factual details underlying the claims, litigation strategies, or the

25  litigation timelines of any of the cases cited in support of her fees averment; therefore, it is

26  impossible for this Court to determine whether such cases are analogous to the instant matter and

27  thus a persuasive indicator regarding the amount of attorney's fees Plaintiff might recover in this

28  action.  The Court acknowledges Defendant's notice of removal appends nearly a thousand pages

1  of filings pertaining to the state court litigation, which suggest a significant amount of fees were

2  already incurred by the time of removal;[12] however, Defendant does not address these matters in

3  its argument for attorneys' fees and the Court declines to speculate as to any potential fees that may

4  be generated where no argument has been raised.[13]  In sum, without further evidence, the Court

5  cannot conclude Defendant has adequately met its preponderance burden as to the calculation of

6  attorneys' fees.  Fritsch, 899 F.3d at 794–95.  Accordingly, because Defendant does not meet its

7  preponderance burden of showing that the attorneys' fees in this case are "more likely than not" to

8  exceed $35,000.00, attorneys' fees cannot be used to satisfy the amount-in-controversy

9  requirement.

10         Nevertheless, the court need not calculate or otherwise address the amount of attorneys'

11  fees potentially at issue in this case since an amount in controversy exceeding $75,000 has already

12  been established based upon the actual damages and civil penalties available under the Song-

13  Beverly Act in this case should Plaintiff prevail.

14         In sum, the Court concludes that Defendant has established complete diversity and an

15  amount in controversy in this action exceeding $75,000.  Defendant has shown that, if successful

16  on the merits, it is reasonable for Plaintiff to recover at least $25,001.00 in actual damages under

17  the Song-Beverly Act.  Likewise, the maximum amount of civil penalties available to Plaintiff is

18  twice the amount of actual damages under the Song-Beverly Act. Thus, Defendant has shown that,

19  if Plaintiff is successful in the action, it is likely that Plaintiff will recover well in excess of $75,000.

20  On this record, Plaintiff's motion to remand must be denied.

**IV.**

**CONCLUSION AND RECOMMENDATION**

23         Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiffs' motion to

24  remand (ECF No. 11) be DENIED.

---

[12] Based on counsel's declaration, the pre-removal state court filings include a stipulation to transfer venue, at least two motions to compel arbitration, a petition for coordination, a stipulated discovery resolution, stipulations of "Early Organizational Meetings," and several case management conference statements.

[13] See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 17, 2021**

UNITED STATES MAGISTRATE JUDGE

24